Federal Deposit Insurance Corporation, Appellee, v.
Heinnie Wainer, Appellant.

Gen. No. 46,416.

First District, First Division.
January 31, 1955.
Released for publication February 23, 1955.

Maurice J. Walsh, of Chicago, for appellant.

John H. Bishop, of Chicago, for appellee; Royal L.
Coburn, John L. Cecil, and Robert A. Dixon, of Washington, D. C., and Ray W. Fick, Jr., of Chicago, of
counsel.

MR. JUSTICE FRIEND delivered the opinion of
the court.
Defendant appeals from an order of the superior
court denying his motion to open a judgment and for
leave to defend.

The judgment, in the aggregate sum of $24,688.74, which included $1,255 as fees for plaintiff's attorney, and costs, was based on a note held by the Federal Deposit Insurance Corporation (hereinafter referred to as FDIC) and acquired by it through endorsement of the First State Bank of Elmwood Park, Illinois. FDIC purchased the note from the First State Bank of Elmwood Park pursuant to the provisions of the Federal Deposit Insurance Act (64 Stat. 873, title 12, U. S. C., sec. 1823 (e)) in order to facilitate the assumption of its deposit liabilities by another insured bank. The First State Bank of Elmwood Park was closed by the auditor of public accounts of the State of Illinois on April 11, 1953 for examination and adjustment, and thereafter was not allowed to reopen and resume the banking business. Application was made by it to FDIC for financial assistance pursuant to the terms of the Federal Deposit Insurance Act. Assistance was granted, and a contract was entered into with FDIC on May 26, 1953 under the terms of which certain of its assets, including the note in question, were sold to FDIC. Subsequently First State Bank of Elmwood Park ceased to do any further banking business, and as part of the over-all transaction the bank's deposit liabilities were assumed in toto by a newly organized bank, Bank of Elmwood Park, and FDIC is in the course of liquidating the assets it purchased from First State Bank of Elmwood Park. The transaction by which the note was acquired was an integral part of the performance by FDIC of a statutory duty, as directed by an act of congress (title 12 U. S. C., secs. 1811 et seq.).

Defendant's motion to open the judgment and for leave to defend alleged that the note was acquired by plaintiff after maturity and with notice of defects and defenses thereto, and that it was acquired by means of fraud. In support of these allegations the factual

situation underlying the transaction was set forth at length and may be summarized as follows. Henry J. Beutel, who was president of both the Belmont National Bank of Chicago and the First State Bank of Elmwood Park, solicited and requested defendant to make a $25,000 deposit of cash in the Belmont National Bank. This money was delivered to Beutel who issued a receipt therefor in the name of the Belmont National Bank on December 28, 1951. Defendant, on frequent occasions thereafter, sought to withdraw the funds but was requested and persuaded by Beutel to continue the deposit. Defendant ultimately insisted on obtaining his money, and on Beutel's request and representation that the affairs of the bank would be embarrassed, he was, on January 29, 1953, persuaded to execute a note payable in fifteen days to the First State Bank of Elmwood Park, in the amount of $25,000, which amount was paid to defendant. At the time of the execution of the note Beutel said that it would be satisfied before maturity by funds due defendant from Belmont National Bank. This agreement was not carried out by Beutel, and after the note matured defendant was induced and persuaded to execute a new note in the amount of $22,500, payable to the First State Bank of Elmwood Park, due in thirty days. This was the instrument upon which the judgment in controversy was entered. The reduction was accomplished by the use of $2,560 furnished by Beutel, $2,500 of which was applied on principal and $60 on estimated interest. Beutel again at this time assured and promised defendant that this note would be satisfied with the funds of defendant on deposit in Belmont National Bank.

Defendant's affidavit in support of the motion substantially recited the foregoing matters, and attached thereto was the original note to the First State Bank of Elmwood Park in the sum of $25,000 which was marked paid, the receipt of the Belmont National Bank

of Chicago signed by Beutel as president, and the handwritten memorandum of Beutel which accompanied the $2,560 given by him to defendant for use in reducing the first note by $2,500 and for payment of the $60 on account of interest.

 In denying the motion to vacate Judge McKinlay held in effect that the motion and supporting affidavit presented no meritorious defense to the judgment. We think his ruling was correct, for the note in controversy was given to a bank with the secret agreement that it would not be enforced against its maker; under such circumstances the defense of want or failure of consideration cannot be set up as a defense by the maker in an action by the FDIC, the purchaser of the note from the bank. The circumstances of this proceeding come directly within the holding of the United States Supreme Court in D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U. S. 447. There FDIC acquired a note from a bank to which it had rendered financial assistance. However, it followed the alternative provided for in section 1823 (e), title 12, U. S. C., wherein it made a loan to the bank rather than a purchase of its assets in order to enable its deposit liabilities to be assumed by another insured bank, and thus acquired the note sued on as part of the collateral to that loan. The maker of the note defended on the ground that it had a side agreement with the bank as the result of an understanding that the note was not to be called for payment, and that all interest payments were to be repaid. In holding the maker liable to FDIC on the instrument, Mr. Justice Douglas, speaking for the court, said: "Plainly one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners. . . . Moreover, as we have seen, the inability of an accommodation maker to plead the defense of no consideration does not depend on his commission of a

penal offense. The test is whether the note was designed to deceive the creditors or the public authority or would tend to have that effect." In concurring, Mr. Justice Jackson added: "The Corporation did not simply step into the private shoes of local banks. The purposes sought to be accomplished by it can be accomplished only if it may rely on the integrity of banking statements and banking assets. . . . the corporation has a dual relation of creditor or potential creditor and of supervising authority toward insured banks."

In Federal Deposit Ins. Corp. v. Alker, 151 F.2d 907 (cert. denied, 327 U. S. 799), FDIC brought suit on a note acquired by it from a bank to which it had lent financial assistance. The maker there also defended on the ground that he had an oral side agreement with the bank that it would not disturb the loan or the pledged collateral until security values had risen to such a point that he could recover his equity in the collateral. In affirming judgment in favor of FDIC, the court pointed out the similarity of the factual situation to the D'Oench case, observing that the differences which existed were immaterial, and holding that as the result of the secret agreement the defense was not enforceable against FDIC.

It is significant that the note in the case at bar was regular on its face and was given with an alleged understanding not disclosed on the records of the bank.

The two defenses interposed, namely, (1) alleged misrepresentation constituting fraud, and (2) want or failure of consideration, are without merit. The alleged misrepresentation was, at best, one as to future intent and could not constitute fraud. May v. Chas. O. Larson Co., 304 Ill. App. 137; Brodsky v. Frank, 253 Ill. App. 491. The allegation of want or failure of consideration is contradicted by defendant's own statement of the facts. In his affidavit in support of the motion to open judgment, defendant alleged that

237

upon his execution of the note he was assured by Beutel that the bank would not look to him for payment, but that Beutel would satisfy the note from the deposit at the Belmont National Bank.

It is suggested in plaintiff's brief that defendant may have a valid claim against the Belmont National Bank through appropriate action, but we are not called upon to decide that issue. The denial of defendant's motion was proper; it was not an abuse of discretion on the part of the trial judge, and his judgment is therefore affirmed.

Judgment affirmed.

BURKE, P. J. and NIEMEYER, J., concur.